T.C. Memo. 1998-205


UNITED STATES TAX COURT


DALE ALLAN RINEHART, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 26402-96.                    Filed June 11, 1998.


Dale Allan Rinehart, pro se.

<u>Brigham J.L. Sanders</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined deficiencies in petitioner's 1992 and 1993 Federal income taxes in the amounts of $43,959 and $44,656, respectively.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions,[1]

_____

    [1]  Petitioner concedes that he is not entitled to deduct alimony in the amount of $9,288 for both 1992 and 1993 and
                                        (continued...)

the sole issue for decision is whether petitioner's horse breeding activity was an activity not engaged in for profit.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Campbell, Texas, at the time he filed his petition.

Petitioner has been an airline pilot with American Airlines for more than 32 years. During 1992 and 1993, petitioner was on reserve status. During this time, he worked an average of 5 days a month, but he was available to work 20 days a month. In 1992 and 1993, petitioner earned wages of $169,858 and $166,040, respectivelyPetitioner has been involved with horses since childhood. He owned his first cutting horse[2] when he was 7 years old and first trained a cutting horse when he was a teenager.

Starting in 1979, petitioner decided to breed, train, and sell quarter horses for cutting horse competitions (the horse

[1](...continued)
charitable contributions in the amounts of $5,200 and $4,800 for 1992 and 1993, respectively. Respondent concedes that petitioner is entitled to deduct home mortgage interest expenses in the amounts of $20,376 and $19,882 for 1992 and 1993, respectively, and an unreimbursed employee expense in the amount of $1,216 for 1993.

[2] Horses (generally quarter horses) are bred and trained as cutting horses for competitions in which the horse must separate one cow from the herd. Horses are bred with "cutting" bloodlines which give them the natural ability to be competitive. The raising and training of a foal for cutting horse competition takes approximately 4 years.

breeding activity). Prior to this, petitioner was not involved in horse breeding. Petitioner derived personal pleasure and enjoyment from the horse breeding activity.

Before starting the horse breeding activity, petitioner studied breeding operations and the effect of bloodlines on performance, read books and journals on the subject matter, and attended a short course on equine reproduction at a local university. Petitioner also had knowledge of equine artificial insemination techniques. Petitioner, however, did not consult with any horse breeders about the best way to minimize expenses or to operate a profitable business.

Petitioner operated the horse breeding activity by himself. He started by purchasing a stallion from which to breed cutting horses. In 1985, petitioner owned between 65 and 70 horses; however, only one was a stallion, and the remaining horses were mares or foals. Pursuant to a divorce decree in 1986, petitioner transferred about half of the horses to his former spouse, but he retained the stallion.

In 1990, hoping to establish a name in the cutting horse industry, petitioner began rebuilding his herd and rented an indoor arena in Royce City, Texas. In March 1991, petitioner purchased a 40-acre horse farm in Campbell, Texas, for $350,000 called "Compass R Ranch" and leased an additional 40 acres adjacent to the farm (together referred to as the ranch). The farm had an arena, a blacksmith shop, a stallion and breeding

barn, and several pastures for raising and training the horses.

Petitioner performed most of the work on the ranch. In 1992 and 1993, petitioner spent a considerable amount of time renovating the ranch. Daily activities on the ranch included weed control of the pasture, hauling hay, repairs of the stalls or fences, and other general maintenance work. In addition to the daily chores, petitioner spent time breaking and training young horses on the ranch. During the breeding season, petitioner's main activity was encouraging "live cover" of the horses by leading the stallion to the mare. When petitioner was away on flights for American Airlines, a laborer would come in to feed the horses and clean the stalls.

Petitioner sold one horse in 1992 and none in 1993. Petitioner showed his horses in cutting horse competitions; however, he never received any monetary awards from these competitions.

Petitioner maintained inadequate records of the horse breeding activity. Petitioner did not record information about the purchases or sales of his horses. Petitioner did not make written forecasts or projections of future income. Additionally, petitioner has never kept a separate checking account or other bank account for the horse breeding activity. Prior to 1995, petitioner did not advertise the horse breeding activity.

The horse breeding activity never showed a profit. Petitioner reported gross sales from this activity in the amounts

of $2,150 and $3,500 for 1992 and 1993, respectively.  From 1986
through 1996, petitioner reported the following Schedule F gross
income and net losses from the horse breeding activity:

| Year | Gross Income | (Net Losses) |
|------|------|------|
| 1986 | Unknown | ($92,210) |
| 1987 | Unknown | (92,560) |
| 1988 | Unknown | (99,725) |
| 1989 | Unknown | (122,948) |
| 1990 | $-0- | (101,889) |
| 1991 | 388 | (119,872) |
| 1992 | 2,085 | (117,904) |
| 1993 | -0- | (115,729) |
| 1994 | 300 | (154,365) |
| 1995 | 19,136 | (130,660) |
| 1996 | 32,137 | (104,137) |

In the notice of deficiency, respondent determined that
petitioner did not engage in the horse breeding activity for
profit and therefore disallowed the losses claimed for 1992 and
1993.

OPINION

Section 183(a) provides generally that, if an activity is
not engaged in for profit, no deduction attributable to such
activity shall be allowed except as provided in section 183(b).
Section 183(c) defines an "activity not engaged in for profit" as
"any activity other than one with respect to which deductions are
allowable for the taxable year under section 162 or under
paragraph (1) or (2) of section 212."

For a deduction to be allowed under sections 162 or 212(1)
or (2), a taxpayer must establish that he or she engaged in the
activity with an actual and honest objective of making an

economic profit independent of tax savings. <u>Antonides v. Commissioner</u>, 91 T.C. 686, 693-694 (1988), affd. 893 F.2d 656 (4th Cir. 1990); <u>Dreicer v. Commissioner</u>, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The expectation of profit need not have been reasonable; however, the taxpayer must have entered into the activity, or continued it, with the objective of making a profit. <u>Hulter v. Commissioner</u>, 91 T.C. 371, 393 (1988); sec. 1.183-2(a), Income Tax Regs.

Whether the requisite profit objective exists is determined by looking at all the surrounding facts and circumstances. <u>Keanini v. Commissioner</u>, 94 T.C. 41, 46 (1990); sec. 1.183-2(b), Income Tax Regs. Greater weight is given to objective facts than to a taxpayer's mere statement of intent. <u>Thomas v. Commissioner</u>, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs. Petitioner has the burden of proof. Rule 142(a).

Section 1.183-2(b), Income Tax Regs., provides a list of factors to be considered in the evaluation of a taxpayer's profit objective: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the

taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. This list is nonexclusive, and the number of factors for or against the taxpayer is not necessarily determinative, but rather all facts and circumstances must be taken into account, and more weight may be given to some factors than to others. See sec. 1.183-2(b), Income Tax Regs.; cf. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980).

Petitioner contends that the losses from the horse breeding activity are properly deductible because the activity was motivated by an actual and honest objective of making a profit. Conversely, respondent asserts that the activity was not engaged in for profit. We agree with respondent.

Manner in Which the Activity Is Conducted

The fact that a taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. The parties have stipulated that petitioner did not keep adequate records of the horse breeding activity. Petitioner did not make any written forecasts or projections of future income. Additionally, petitioner's failure to formulate a credible business or profit plan indicates that his actions were not businesslike and that he lacked a profit motive.

Petitioner started the horse breeding activity with no concept of what his ultimate costs might be or how he might achieve any degree of cost efficiency. Additionally, petitioner conducted his activity unaware of the amount of revenue he could expect or what risks might impair the production of such revenues.

Petitioner commingled the financial affairs of the horse breeding activity with his personal finances. He paid all the expenses of the horse breeding activity from his personal account, and the horse breeding activity maintained no financial accounts of its own. This commingling of funds is an indication that the activity is a hobby rather than a business for profit. See Ballich v. Commissioner, T.C. Memo. 1978-497.

Based on these facts, we conclude that petitioner did not conduct the horse breeding activity in a businesslike manner.

Expertise of Petitioner

A taxpayer's expertise, research, and study of an activity, as well as his consultation with experts, may be indicative of a profit intent. Sec. 1.183-2(b)(2), Income Tax Regs. Since childhood, petitioner has had an interest in cutting horses. Petitioner studied breeding operations, read materials on breeding methods, and attended a short course on equine reproduction at a local university. Although petitioner became knowledgeable about horses and breeding techniques, he was not knowledgeable about the economics of the activity.

Significantly, petitioner did not seek professional advice on the economic aspects of horse breeding.  Taken as a whole, these facts do not persuade us that the activity had a profit motive.

Elements of Personal Pleasure

The absence of personal pleasure or recreation relating to the activity in question may indicate the presence of a profit objective.  Sec. 1.183-2(b)(9), Income Tax Regs.  The mere fact that a taxpayer derives personal pleasure from a particular activity does not, per se, demonstrate a lack of profit motive. Petitioner stipulated that he derived personal pleasure and enjoyment from the horse breeding activity.  Based on the facts of this case, we find that this factor weighs against petitioner.

Time and Effort Expended by Petitioner

Petitioner spent a significant amount of time on the horse breeding activity; however, he also stipulated that he received pleasure from the horse breeding activity.  Where an activity has substantial personal or recreational aspects, the time and effort spent may be due to a taxpayer's enjoyment of the activity rather than an intent to derive a profit.  White v. Commissioner, 23 T.C. 90, 94 (1954), affd. per curiam 227 F.2d 779 (6th Cir. 1955).  Although enjoying an activity does not preclude a profit objective, the facts of this case suggest that petitioner spent time on the activity due to his fondness for horses rather than

an expectation of profit. Cf. <u>Harrison v. Commissioner</u>, T.C. Memo. 1996-509.

<u>The Expectation That Assets May Appreciate in Value</u>

An expectation that assets may appreciate in value may also be an indication of the taxpayer's motive with respect to such activity. Sec. 1.183-2(b)(4), Income Tax Regs. Petitioner believed that the horse breeding activity would eventually become profitable due to appreciation in the value of the ranch and the horses. Petitioner's unsupported belief, however, is insufficient. It is necessary that petitioner's objective be to realize a profit on the entire operation. <u>Bessenyey v. Commissioner</u>, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). This requires future net earnings and appreciation sufficient to recoup the losses which petitioner sustained in prior years. <u>Id.</u> Petitioner's contention that he expected to experience a profit eventually is unsupported by the record. He failed to produce credible evidence that the horse breeding activity had any realistic chance of recovering the excessive losses previously incurred. Accordingly, this factor weighs against petitioner.

<u>The Activity's History of Income or Losses</u>

A record of substantial losses over several years may be indicative of the absence of a profit motive. <u>Golanty v. Commissioner</u>, 72 T.C. 411, 426 (1979), affd. without opinion 647 F.2d 170 (9th Cir. 1981). This Court has recognized that the

startup phase of a horse breeding activity is 5 to 10 years. Engdahl v. Commissioner, 72 T.C. 659, 669 (1979). Petitioner sustained an uninterrupted series of losses beyond the period which is customarily necessary to bring a similar operation to profitable status. See id.; see also sec. 1.183-2(b)(6), Income Tax Regs.

Petitioner also argues that the losses can be explained by a series of unfortunate events beyond his control. We are unpersuaded. Petitioner did not show that had events beyond his control not occurred the horse breeding activity would have been profitable. See Burger v. Commissioner, 809 F.2d 355 (7th Cir. 1987), affg. T.C. Memo. 1985-523. In light of these facts, we find that petitioner's history of losses indicates a lack of a profit motive.

Petitioner's Financial Status

Substantial income from sources other than the activity in question, particularly if the activity's losses generated substantial tax benefits, may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. In 1992 and 1993, petitioner earned wages in the amounts of $169,858 and $166,040, respectively, as an airline pilot. Petitioner could afford to operate the horse breeding activity as a hobby, and it is likely that he sought to reduce or eliminate his tax liability by using the losses from the horse breeding activity to offset income from other sources. These facts, coupled with the

fact that the taxpayer failed to pay any Federal withholding tax for his income from American Airlines, indicate a lack of profit objective.  See <u>Whalley v. Commissioner</u>, T.C. Memo. 1996-533.

<u>Conclusion</u>

After reviewing the entire record, we conclude that petitioner did not engage in the horse breeding activity with an actual and honest objective of making a profit within the meaning of section 183.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.