T.C. Memo. 2016-136

UNITED STATES TAX COURT

EMBROIDERY EXPRESS, LLC, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

BRENT L. MCMINN AND LYNETTE J. MCMINN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 6684-11, 6748-11.            Filed July 21, 2016.

Harry Charles, for petitioners.

Jessica R. Nolen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  These cases have been consolidated for trial, briefing, and

opinion.  Respondent determined deficiencies and accuracy-related penalties under

section 6662(a) in the Federal income tax of Embroidery Express, LLC

[*2] (Embroidery Express), and Brent L. McMinn and Lynette J. McMinn.[1]  For

Embroidery Express, respondent determined deficiencies of $2,161, $23,584, and

$1,088 for fiscal tax years ending June 30, 2005, 2006, and 2007, respectively, and

accuracy-related penalties of $273.40 and $4,716.80 for fiscal tax years ending

June 30, 2005 and 2006, respectively.  For Mr. and Mrs. McMinn, respondent

determined deficiencies of $68,328, $93,245, and $161,341 for taxable years

2004, 2005, and 2006, respectively, and accuracy-related penalties of $13,665.60,

$18,649, and $32,268.20 for taxable years 2004, 2005, and 2006 (years at issue),

respectively.

For Embroidery Express, the issue for decision after concessions[2] is whether

Embroidery Express is entitled to depreciation and interest expense deductions for

vehicles subject to the strict substantiation requirements of section 274(d).

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]The parties agree that Embroidery Express:  (1) did not have additional dividend income of $9,108 and $116,325 for the fiscal tax years ending June 30, 2005 and 2006, respectively and (2) is not entitled to foreign tax credits of $169 and $14,234 for the fiscal tax years ending June 30, 2005 and 2006, respectively. Respondent concedes on brief that Embroidery Express:  (1) had long-term gain of $175 and ordinary gain of $18,560 for the fiscal tax year ending June 30, 2006, from the sale of a 2004 BMW and (2) is not liable for sec. 6662(a) penalties for fiscal tax years ending June 30, 2005 and 2006.

**[*3]**   For Mr. and Mrs. McMinn, the issues for decision after concessions[3] are whether they:  (1) operated a cattle and deer activity and a resort activity with profit objectives; (2) are entitled to deduct business expenses in amounts greater than respondent allowed; (3) are entitled to a loss deduction from the sale of a motor home; (4) are entitled to deduct charitable contributions in amounts greater than respondent allowed; and (5) are liable for accuracy-related penalties under section 6662(a).  All other issues are computational.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners[4] resided in Missouri, and Embroidery Express had its principal place of business in Missouri, at the time of filing their timely petitions.

---

[3]The parties agree that Mr. and Mrs. McMinn:  (1) received no dividend income during the years at issue; (2) did not have additional income of $7,507 related to the sale of timber in 2005; and (3) received additional income of $1,015 in 2004 from a legal settlement.  Respondent concedes on brief that petitioners: (1) conducted a trade or business activity related to their vehicle equipment rental business and do not have income adjustments related to that business for the years at issue and (2) do not have additional income of $12,000 and $12,000 for 2004 and 2005, respectively, flowing from Anchor Leasing, Inc.

[4]When the Court uses the term "petitioners", it is to refer to Mr. and Mrs. McMinn and not Embroidery Express.

**[*4]**   Before the years at issue Mrs. McMinn formed a successful and growing embroidery business, and Mr. McMinn worked as a construction contractor.  As Mrs. McMinn's business continued to grow, Mr. McMinn left the construction business to build the embroidery business with his wife.  Mr. McMinn had a high school education and during the years at issue had assumed primary responsibility for petitioners' embroidery business.

Mrs. McMinn educated their six children at home.  In 2004 the children, K.M., Dylan, Travis, Courtney, Kyle, and Bryan, were 8, 11, 13, 17, 19, and 21 years old, respectively.[5]  During the years at issue petitioners claimed K.M., Dylan, and Travis as dependents on their Federal income tax returns.  In addition to the embroidery business, petitioners had a deer hunting preserve and cattle activity and a resort activity.  Petitioners had titled most of their assets in the name of B.L.M. Trust, a joint revocable grantor trust established by petitioners (petitioners' trust).

---

[5]Pursuant to Rule 27(a)(3) this Court refers to minor children by their initials.  K.M. was petitioners' only minor child at the time they filed their petition.

**[*5]** I.    Petitioners' Activities

A.    Cattle and Deer Activity

Mr. McMinn grew up working on a farm, where his family raised cattle. Before the years at issue petitioners acquired 176 acres of land that surrounded their residence, to raise cattle. However, by the years at issue Mr. McMinn had decided that raising cattle was no longer profitable, and he decided to use the land for a deer hunting preserve. Therefore, during the years at issue petitioners no longer had any cattle.

Petitioners did not have a written business plan or consult with experts for advice on developing a deer hunting preserve but instead relied on acquaintances for advice. They had no experience in developing a deer hunting preserve. They had a separate bank account for the deer hunting preserve and maintained records of the activity's assets to deduct depreciation expenses. As petitioners were considering the development of a deer hunting preserve, they intended to continue deducting previously incurred depreciation expenses for assets related to the cattle activity.

Petitioners did not market a deer hunting preserve, nor did they purchase any deer. They had previously built fences for the cattle activity, but did not upgrade the fences for a deer hunting preserve. To maintain a deer hunting

[*6] preserve they were required to obtain a permit.  Petitioners researched the permit issues with the Missouri Department of Conservation and with game wardens, but they ultimately decided not to pursue the deer hunting preserve because there was too much risk.  Therefore, they did not obtain the permit for the deer hunting preserve.  Consequently petitioners did not open or operate the deer hunting preserve during the years at issue.

Petitioners purchased several parcels of land for the cattle and deer activity. Petitioners purchased their first parcel of land for $100,000 in 1988.  They subsequently purchased additional parcels for the deer hunting preserve, but the purchase prices of those parcels are not in the record nor is the total acreage of the property used for the activity.  However, for the years at issue petitioners' cost bases in assets for the cattle and deer activity, including the land, buildings, and equipment, totaled $222,013, $193,187, and $195,024, respectively.  Petitioners purchased the last parcel to be used for the deer hunting preserve approximately in 2006.  After the years at issue, petitioners listed the property for sale at $4.4 million.  For the years at issue petitioners attached Schedules F, Profit or Loss From Farming, to their joint Forms 1040, U.S. Individual Income Tax Return, for the cattle and deer activity.  A 22.5-acre portion of their land was enrolled in a Federal conservation program, and most of the gross receipts reported from the

[*7] cattle and deer activity were received on the condition that petitioners keep that portion of the land clear of crops and harvesting.[6] For the years at issue petitioners derived total gross income of $3,142 from the activity. On the Schedules F petitioners claimed net losses of $18,155, $6,751, and $9,590, respectively, for the deer hunting preserve activity.

B.     Resort Activity

In 2004 petitioners formed Spring Lake Resort, LLC (Spring Lake Resort), with the purpose of developing land as a resort. They purchased the land and titled it in the name of petitioners' trust. The property includes a lake.

Petitioners completed significant improvements on the land to create the resort. Before the formation of Spring Lake Resort petitioners built a pavilion on the resort property that included restrooms and three campsites that could accommodate recreational vehicles. After additional improvements, the resort area included jet ski docks, fish pads, automatic fish feeders, and fire pits; a dam

---

[6]Only a 22.5-acre portion of the land was enrolled in the Federal conservation program. The parties stipulated that the contract period was from July 27, 2005, to September 30, 2007. However, the contract states that the period was from July 27, 2004, to September 30, 2007. Accordingly, the Court will disregard the parties' stipulation. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989) (disregarding a stipulation as inconsistent with a stipulated exhibit).

[*8] was rebuilt, and a bridge was added.  Petitioners spent at least $95,000 on the improvements.

After the improvements were completed petitioners intended to rent campsites and market the property as a resort.  They planned to charge $100 per day for use of the pavilion and $2.50 per pound of fish caught from the lake.  A church occasionally rented the resort's pavilion during the years at issue for $100 per day.

For the years at issue petitioners did not pay for any advertising of the resort and did not publicly advertise access to the resort.  They did not have a written business plan or any expertise in the development of a resort.  They did not maintain separate books and records or a separate bank account for the resort.  However, they did maintain depreciation schedules for tax reporting purposes.  They claimed depreciation deductions for 50% of the property values for 2004 and 33% for 2005 and 2006 in order to account for personal use.  For the years at issue they owned jet skis that they used on the lake.  In 2008 they built a new house by the lake.

For the years at issue petitioners reported a total gross income of $2,105 for Spring Lake Resort, and claimed net losses of $8,412, $3,938, and $1,181, respectively.

**[\*9]** II.    Petitioners' Embroidery Business

During the years at issue petitioners' embroidery business was primarily involved in acquiring used embroidery machinery, refurbishing it, and selling it. Petitioners' embroidery business involved significant travel because they purchased and sold embroidery machinery across the country and abroad. They would purchase embroidery machinery and transport it back to their facilities in rural Missouri to refurbish. Once petitioners had refurbished the machinery, they would sell it and transport it for the buyer. They had also acquired expertise in the transportation of large commercial embroidery machinery and would provide unrelated embroidery companies with specialized transportation services.

Petitioners would purchase and refurbish approximately 300 to 500 embroidery machines a year. Each machine would cost between $10,000 and $75,000. The average machine that petitioners would purchase was 20 to 21 feet long and weighed approximately 3,500 pounds. The business was very successful, and petitioners averaged $8,750,000 in sales per year.

[*10] To effect their business, petitioners formed several related entities: Embroidery Express; Advanced Embroidery Supply; Stitch It International, Inc. (Stitch It); and Embroidery Services, Inc. (Embroidery Services).[7]

A.    Embroidery Express

Embroidery Express was incorporated on August 16, 2002, and was taxed as a subchapter C corporation.  Embroidery Express was organized primarily to rent and sell embroidery machines in Mexico.

Embroidery Express owned three passenger automobiles throughout the years at issue.  On December 1, 2003, Embroidery Express purchased a 2004 BMW for $53,325.  The BMW was used to transport clients from the airport and to entertain them while they were visiting petitioners' office.[8]  Embroidery Express purchased a Toyota Avalon for $30,741 on May 2, 2006, and subsequently sold it on March 16, 2007.  On June 4, 2007, Embroidery Express purchased a Toyota Corolla for $15,203.  For the years at issue, Embroidery Express claimed business expense deductions for depreciation expenses and interest expenses for the three passenger automobiles.

---

[7]The Court uses the term "embroidery business" to collectively refer to these entities.

[8]Petitioners' office was in Patton, Missouri, which is approximately 120 miles from the nearest commercial airport.

[*11] B.     Advanced Embroidery Supply

Advanced Embroidery Supply was used to pay petitioners' minor children. Petitioners reported the income and expenses of Advanced Embroidery Supply on Schedule C, Profit or Loss From Business (Sole Proprietorship), attached to their Federal income tax return for each of the years at issue. For the years at issue, petitioners claimed business expense deductions for total wages paid to K.M., Dylan, Travis, and Courtney of $46,516, $50,913, and $64,650, respectively. Advanced Embroidery Supply issued Forms W-2, Wage, and Tax Statement, to the children for the wages they received. The children reported the wages on their own tax returns using the Forms W-2.

During the years at issue Advanced Embroidery Supply paid the children by the job with each child receiving a large payment at yearend that was based at least partially on the performance of petitioners' embroidery business. Petitioners did not pay the children by the hour. The children had access to the money that Advanced Embroidery Supply paid them, but they were required to save some money so that when each child reached the age of 16, he or she could purchase a vehicle that cost at least $10,000. Each child was therefore able to purchase his or her own vehicle at the age of 16. The children also were required to save some of the amounts paid as wages and tithe other amounts, and they could spend the

[*12] remaining amounts as they chose. Some of the children also saved to purchase recreational vehicles.

The children completed a variety of tasks. In 2004 K.M., who was then only 8, was limited in her duties, and Advanced Embroidery Supply did not pay K.M. in 2004. In 2005 and 2006 K.M. would clean petitioners' office. The office included bathrooms, a kitchen, and a break room. K.M. would also assist petitioners' business with inventory and cleaning machines. Advanced Embroidery Supply paid K.M. wages in 2005 and 2006. In 2006 Advanced Embroidery Supply paid K.M. $200, $500, $350, and $10,000 on February 24, May 26, July 28, and December 22, respectively, for a total of $11,050. Petitioners claimed K.M. as a dependent on their Federal income tax returns for the years at issue.

Dylan and Travis both assisted with the transportation of embroidery machines, which required out-of-State trips. Moreover, Dylan and Travis assisted petitioners' employees with refurbishing embroidery machines. Dylan and Travis also provided lawn care services for petitioners' properties. In 2004 Dylan received wages of $65, $146.25, and $9,000 on May 18, August 10, and December 22, respectively, for a total of $9,211.25. In 2004 Travis received wages from Advanced Embroidery Supply of $55, $140, and $9,000 on May 18, August 10,

[*13] and December 22, respectively, for a total of $9,195. In 2006 Dylan received wages of $1,000, $2,000, $300, $1,000, and $21,000 on February 24, May 26, June 9, July 28, and December 22, respectively, for a total of $25,300. In 2006 Travis received wages of $1,000, $2,000, $300, $1,000, and $24,000 on February 24, May 26, June 9, July 28, and December 22, respectively, for a total of $28,300. Both Travis and Dylan were claimed as dependents on petitioners' Federal income tax returns for the years at issue.

Before the years at issue Courtney had completed her home schooling, and during the years at issue she worked full time for petitioners. Courtney was a receptionist for their embroidery business, sorting the mail, answering calls, and scheduling appointments. She would also prepare documents for the transportation of embroidery machines. In 2004 Courtney received wages of $110, $3,000, $12,000, and $13,000 on April 9, October 25, December 22, and December 24, respectively, for a total of $28,110. Advanced Embroidery Supply paid her wages of $5,000 in 2005 and did not pay her wages in 2006. Petitioners paid Courtney on the basis of what they had paid former secretaries. For the years at issue Courtney was not claimed as a dependent on petitioners' Federal income tax return. Courtney married in May 2006.

[*14] For 2005 Advanced Embroidery Supply deducted $50,913 of business expenses for wages. In contrast to what they had done for 2004 and 2006, petitioners did not provide a complete accounting of the wages paid to each child for 2005, but they introduced copies of checks written to the children. Dylan received checks for $165 and $2,000 dated May 23 and October 28, respectively. Travis received a check for $4,800 dated December 9.[9] The parties stipulated that Advanced Embroidery Supply paid Courtney wages of $5,000 in 2005.

C.     Stitch It

Stitch It was incorporated on November 24, 1998, and was taxed as a subchapter S corporation. Petitioners used Stitch It as their primary entity to purchase and sell embroidery machinery.

1.     Business Travel and Purchase of a Motor Home

Mr. McMinn would travel to embroidery conventions and auctions to purchase and sell embroidery machinery. Petitioners would travel to approximately 14 conventions a year. Petitioners purchased a motor home in the belief that it would be more convenient and cost effective than hotels to travel to

---

[9]The other checks written to the children were from entities other than Advanced Embroidery Supply or were dated in 2006. The record does not include any checks to K.M. for 2006. Petitioners also introduced bank deposit forms for the children; but because those deposit forms do not show who paid the funds, the Court does not find them relevant to its analysis.

[*15] embroidery conventions.[10] Petitioners would attach a trailer to the motor home to transport embroidery machines that they purchased or intended to sell at the conventions. In addition to using the motor home for their embroidery business, petitioners used it for personal use and allocated expenses accordingly. However, after petitioners built the resort, they used the motor home less for personal use.

The motor home included two sets of motor home equipment. Stitch It valued the motor home and equipment at $519,783. Because Stitch It did not use the motor home solely for business, it calculated the motor home's depreciable basis as $484,838.[11] Petitioners claimed deductions for depreciation expenses with respect to the motor home on Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., attached to their Federal income tax returns for the years at issue.

For the years at issue petitioners started using the motor home less frequently because their business had become more international, and they could purchase and sell embroidery machinery through Internet auctions. The motor

---

[10]Stitch It also claimed deductions for hotel expenses for the years at issue.

[11]For the years at issue petitioners claimed that 6%, 9%, and 0%, respectively, of the motor home's use was personal.

**[*16]** home and equipment were therefore sold on April 8, 2006, and Stitch It claimed a loss deduction. Petitioners reported the loss on their 2006 Federal income tax return.

2. Vehicles

Stitch It used a 2005 Chevy Equinox, a 2005 green Chevy Silverado, a 2005 blue Chevy Silverado, and a 2005 black Chevy truck. The three trucks were owned jointly by Mr. McMinn and Stitch It.

Mr. McMinn was the primary driver of the 2005 Chevy Equinox. Stitch It calculated that the 2005 Chevy Equinox was used 50% of the time for business and depreciated the vehicle accordingly.

The three trucks were full-size heavy-duty trucks that were used to move embroidery machinery. Petitioners purchased and sold approximately 300 to 500 embroidery machines a year. The embroidery machines were generally moved at least twice because petitioners would purchase a machine, move it to their facilities in rural Missouri, refurbish it, sell it, and deliver it for the buyer. In addition to moving machines that Stitch It purchased and sold, petitioners would use their expertise to move commercial embroidery machines for unrelated embroidery companies.

**[*17]** For the years at issue petitioners claimed business expense deductions for depreciation expenses with respect to the vehicles. Stitch It maintained logs of their trips in the trucks but did not produce those logs for this proceeding.

3. Other Expenses

Stitch It claimed various business expense deductions for the years at issue, including a home phone, cellular phones, property taxes, repair and maintenance for the motor home, airline tickets, satellite television, and lawn care.

Stitch It claimed business expense deductions for the years at issue for a phone in petitioners' home. Mr. McMinn testified that the business purpose of the phone was for employees and clients to contact him after business hours.

Stitch It claimed business expense deductions for cellular phones for employees who traveled, including Mr. McMinn. Stitch It also paid for cellular phones for Mrs. McMinn, petitioners' daughter Courtney, and a subcontractor.

Stitch It claimed business expense deductions for satellite television. The satellite TV was available in petitioners' office for clients to watch while waiting for appointments. Petitioners also had satellite television in their home.

[*18] D.     <u>Embroidery Services</u>

Embroidery Services was incorporated on July 28, 1999, and was taxed as a subchapter S corporation. The primary purpose of Embroidery Services was to sell machines wholesale from Stitch It to two customers in Mexico.

Embroidery Services purchased a 1999 Toyota Tacoma truck on December 21, 2003. Kyle McMinn was the primary driver. The 1999 Toyota Tacoma was used with a small trailer to transport embroidery machinery. Embroidery Services allocated 80% of the costs associated with the 1999 Toyota Tacoma for business use and the remaining 20% for personal use. Embroidery Services claimed interest expense deductions with respect to the 1999 Toyota Tacoma.

In addition to the primary purpose of Embroidery Services, petitioners also purportedly used it as an entity to buy and sell land purchased in Patton, Missouri. Petitioners acquired land in 2004 and 2005 in the name petitioners' trust.[12] Embroidery Services deducted interest expenses that petitioners claimed on Schedules K-1 attached to their Federal income tax returns for the years at issue.

---

[12]Petitioners contend that Embroidery Services owned the land, and petitioners' trust held the land for estate planning purposes. Petitioners presented no documentary evidence to prove that Embroidery Services had an ownership interest in the land.

**[*19]** III.    Juice Plus

During the years at issue Mrs. McMinn operated Juice Plus.  Juice Plus was designed as a downline distribution network where products of National Safety Associates (NSA) were sold to distributors who would recruit associates.  The primary products sold were vitamins, supplements, and health foods.  Petitioners operated Juice Plus out of their residence.  Juice Plus was a sole proprietorship, and petitioners reported the income and deducted the expenses of Juice Plus on Schedules C during the years at issue.[13]

To operate the business Juice Plus had a 2006 Toyota Sequoia, a 2004 Toyota Highlander, a computer, and exercise equipment.  The 2006 Toyota Sequoia was acquired on May 7, 2006.  Mrs. McMinn used the vehicle to attend presentations on products and to sell NSA products.  Petitioners did not keep a mileage log for the 2006 Toyota Sequoia but claimed depreciation deductions on their 2006 return.  For the years at issue Juice Plus also claimed depreciation deductions for the 2004 Toyota Highlander.

---

[13]Petitioners attached two separate Schedules C for each of the years at issue labeled  "NSA - Juice Plus" for Mr. McMinn and"NSA - Juice Plus (Spouse)" for Mrs. McMinn.  In 2006 Mrs. McMinn operated Juice Plus as Constructive Health Services, LLC.

[*20] Petitioners purchased the computer on November 18, 2004. The invoice is addressed to Stitch It and includes the handwritten notation "Lynne-Juice Plus". Petitioners claimed depreciation expense deductions under section 179 for the computer on the Schedules C attached to their Federal income tax returns on the basis of 80% of the computer's cost.[14]

Petitioners purchased several pieces of exercise equipment throughout the years at issue on behalf of Juice Plus. Mr. McMinn testified that the exercise equipment was used as a marketing tool for the NSA nutritional products, and that clients paid to use the exercise equipment. The exercise equipment was in a partitioned room in the office building used by petitioners' embroidery business. Juice Plus did not advertise or market the availability of a gym or exercise equipment. Mrs. McMinn was not a personal trainer during the years at issue, but she was studying to become one. Petitioners claimed depreciation expense deductions for the exercise equipment on their Federal income tax returns for the years at issue on the basis of 80% of the equipment's value.

---

[14]Petitioners also purchased a second computer for Juice Plus on February 15, 2005, and claimed depreciation expense deductions for that computer for 2005 and 2006. The expenses related to that computer do not appear to be at issue.

**[*21]** IV.    Petitioners' Charitable Giving

Petitioners were successful entrepreneurs and would tithe regularly.  For the years at issue petitioners claimed charitable contribution deductions for these donations on Schedules A, Itemized Deductions, attached to their Federal income tax returns.

Petitioners donated $15,600 and $16,050 to Faith Tabernacle World Outreach in 2004 and 2005, respectively.  In 2004 and 2005 petitioners donated a total of $1,500 to Youth With A Mission.  In 2005 petitioners donated $200 to the Church of Corinth.  In 2006 petitioners donated $43,879 to Faith Family Worship Center.  Petitioners claimed charitable contribution deductions with respect to these donations.

In 2004 petitioners donated $2,600 to Kayit's Children's Home.  Kayit's Children's Home is based in Mexico and is not organized as a charity in the United States.  Petitioners claimed a charitable contribution deduction on their 2004 Federal income tax return for the donation to Kayit's Children's Home.

Petitioners donated to Children's Research Foundation (CRF) in 2004 and 2005.  CRF is a partner of the Juice Plus program, and donations to CRF would

[*22] appear on Forms 1099-MISC, Miscellaneous Income, that petitioners

received.[15]  In 2004 petitioners paid CRF $112, $129, and $381.  In 2005

petitioners paid CRF $168 and $1,356.  Petitioners claimed charitable contribution

deductions for the donations paid to CRF in 2004 and 2005.

For the years at issue petitioners donated $3,000, $6,300, and $2,135,

respectively, to R.L. Montgomery Ministries.  R.L. Montgomery Ministries is not

a registered tax-exempt organization in the United States.  R.L. Montgomery is the

purported operator of R.L. Montgomery Ministries and the purported agent of

Ranch House Ministries.  Petitioners claimed the amounts donated to R.L.

Montgomery Ministries as charitable contribution deductions for the years at

issue.

In 2004 petitioners donated office equipment and office furniture to Faith

Family Worship Center.  On their 2004 Federal income tax return they claimed

charitable contribution deductions for the donations.  They valued the office

equipment at $4,050 and the office furniture at $2,900.  They described the office

equipment and office furniture as "office products & computers" and "office

_____

[15]The Forms 1099 are not part of the record, but the parties stipulated that petitioners received the forms from CRF.  Petitioners did not explain with specificity the Juice Plus program, but from the record the Court discerns that NSA would issue petitioners a Form 1099 for products sold during a year and that form included the payments to CRF.

[*23] furniture" on a Form 8283, Noncash Charitable Contributions, attached to their 2004 return. They attached a contemporaneous written acknowledgment from Faith Family Worship Center that generically described the property. They did not have the office equipment or office furniture independently valued.

Petitioners also donated a 2002 Chevy Suburban to Faith Family Worship Center in 2004. They valued it at $26,245 by using the Kelly Blue Book Web site. They attached the Kelly Blue Book valuation to their 2004 Federal income tax return. They claimed a charitable contribution deduction of $15,245 for the donation and reported receiving $11,000 cash from Faith Family Worship Center. Petitioners reported a gain of $3,694 on the disposition of the vehicle.

For 2005 petitioners claimed charitable contribution deductions that flowed through from their entities Embroidery Services and Stitch It of $1,000 and $1,200, respectively. Stitch It claimed $1,000 of the $1,200 for a donation to R.L. Montgomery.

In 2006 Mr. McMinn traveled to Jamaica with the pastor of his church to visit church missions and find a location to build a children's home. Petitioners claimed $3,013 as a charitable contribution deduction for unreimbursed travel expenses with respect to the trip. Petitioners did not obtain a contemporaneous

[*24] written acknowledgment from the church or any other qualified organization for the trip.

V.    Preparation of Petitioners' Tax Returns

Petitioners hired a full-time bookkeeper to maintain records for their activities.  Petitioners also hired a licensed certified public accountant (CPA) to prepare their Federal income tax returns for the years at issue.  The CPA also prepared all of petitioners' entities' returns, including the tax returns for Embroidery Express for the fiscal tax years at issue.  The CPA had 31 years of experience and had prepared petitioners' tax returns for 19 years.

To prepare petitioners' tax returns the CPA would receive copies of petitioners' records from the bookkeeper, review the records, and make corresponding adjustments in the financial statements.  Because petitioners owned several vehicles, the CPA would review reports from petitioners' bookkeeper that stated the ratio of business use to personal use for a particular vehicle, determine that the vehicle was used entirely for business use, or discuss the use of the vehicle with petitioners.  While preparing petitioners' tax returns, the CPA would also meet with petitioners to discuss issues on the returns and review petitioners' documentation.  The CPA credibly testified that the process of preparing petitioners' tax returns was extensive and that petitioners had provided the CPA

**[\*25]** with all the necessary documentation to prepare the returns. In addition to preparing the tax returns, the CPA acted as a business adviser to petitioners.

VI.   Respondent's Notices of Deficiency

Respondent issued Embroidery Express and petitioners timely notices of deficiency on December 17, 2010, and both timely petitioned this Court.[16] In petitioners' notice of deficiency, respondent determined, inter alia, that they: (1) had not operated their cattle and deer activity and their resort activity with profit objectives; (2) had not properly substantiated certain business expenses; (3) were not entitled to a loss deduction from the sale of their motor home; (4) had not properly substantiated certain charitable contributions; and (5) were liable for accuracy-related penalties under section 6662(a).

In Embroidery Express' notice of deficiency, respondent determined, inter alia, that it had not properly substantiated depreciation expenses and interest expenses with respect to its three passenger automobiles.

---

[16]Generally the period of limitations on assessment is three years after the return was filed. See sec. 6501(a). The notices of deficiency were issued after the expiration of the general periods of limitations for the years at issue. The parties did not offer into evidence Forms 872, Consent to Extend the Time to Assess Tax, extending the period of limitations on assessment. See sec. 6501(c)(4). However, petitioners do not raise the period of limitations or the validity of the notices of deficiency as an issue. Because petitioners timely filed a petition, we have jurisdiction. See secs. 6213(a), 6214(a).

**[\*26]**                                    OPINION

Generally, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing the determination is in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Section 7491(a) shifts the burden of proof to the Commissioner if the taxpayer produces credible evidence on any factual issues and satisfies the requirements of section 7491(a)(2).[17]  "Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness)."  Higbee v. Commissioner, 116 T.C. 438, 442 (2001) (quoting H.R. Conf. Rept. No. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).  Petitioners have not shown that they meet the requirements of section 7491(a) nor established their compliance with the substantiation and recordkeeping requirements.  See sec. 7491(a)(2)(A) and (B).  Petitioners therefore bear the burden of proof.

---

[17]Sec. 7491(a)(2) requires a taxpayer to substantiate any item and maintain all records required under the Code.

**[\*27]** I.     Profit Objective of Petitioners' Cattle and Deer Activity and Resort Activity

Section 183(a) generally limits the amount of expenses that a taxpayer may deduct with respect to an activity "not engaged in for profit" to the deductions provided in section 183(b).  Section 183(b)(1) provides that deductions that would be allowable without regard to whether such activity is engaged in for profit are to be allowed.  Section 183(b)(2) further provides that deductions which would be allowable only if such activity is engaged in for profit are to be allowed, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions under section 183(b)(1).  An activity is "not engaged in for profit" if it is an activity other than one with respect to which deductions are allowable for the taxable year under section 162 or section 212(1) or (2).  Sec. 183(c).

In determining whether an activity is engaged in for profit for purposes of section 183, the taxpayer must show that he or she engaged in the activity with an actual and honest objective of making a profit.  See, e.g., Keating v. Commissioner, 544 F.3d 900, 905 (8th Cir. 2008), aff'g T.C. Memo. 2007-309; Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983).

[*28] Although the taxpayer's expectation of a profit need not be reasonable, he or she must have a good-faith objective of making a profit. See, e.g., Keating v. Commissioner, 544 F.3d at 905; Dreicer v. Commissioner, 78 T.C. at 645; Dunn v. Commissioner, 70 T.C. 715, 720 (1978), aff'd on another issue, 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(a), Income Tax Regs. The taxpayer bears the burden of proving the requisite intent. See, e.g., Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); Johnson v. Commissioner, 59 T.C. 791, 814 (1973), aff'd, 495 F.2d 1079 (6th Cir. 1974); see also Dreicer v. Commissioner, 78 T.C. at 646.

Whether a taxpayer engaged in an activity with the requisite profit objective is determined from all the facts and circumstances. E.g., Hulter v. Commissioner, 91 T.C. at 393; Taube v. Commissioner, 88 T.C. 464, 480 (1987); Golanty v. Commissioner, 72 T.C. at 426; sec. 1.183-2(a) and (b), Income Tax Regs. More weight is given to objective facts than to the taxpayer's mere statement of his or her intent. E.g., Dreicer v. Commissioner, 78 T.C. at 645; sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., lists the following factors that should normally be taken into account in determining whether an activity is engaged in for profit: (1) the manner in which the taxpayer carried on the activity,

**[\*29]** (2) the expertise of the taxpayer or his advisors, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or loss with respect to the activity, (7) the amount of occasional profit, if any, which is earned, (8) the financial status of the taxpayer, and (9) the extent to which elements of personal pleasure or recreation are involved.  The list of factors in the regulations is not exclusive, and other factors may be considered in determining whether an activity is engaged in for profit.  No single factor is dispositive. E.g., Golanty v. Commissioner, 72 T.C. at 426; sec. 1.183-2(b), Income Tax Regs.  The determination of a profit objective does not depend on counting the number of factors that support each party's position.  Sec. 1.183-2(b), Income Tax Regs.

>    A.    Cattle and Deer Activity

Respondent disallowed net loss deductions of $18,155, $6,751, and $9,590 for the years at issue, respectively, because petitioners did not prove that the cattle and deer activity was operated for profit under section 183.  The Court will analyze petitioners' cattle and deer activity using the factors listed in section 1.183-2(b), Income Tax Regs.

**[*30]**        1.        <u>Manner in Which the Taxpayer Carries On Activity</u>

The fact that the taxpayer carries on an activity in a businesslike manner may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. Factors to consider that may indicate a businesslike manner are whether the taxpayer: (a) maintained complete and accurate books and records for the activity; (b) conducted the activity in a manner substantially similar to comparable activities that were profitable; (c) changed operating procedures, adopted new techniques, or abandoned unprofitable methods in a manner consistent with an intent to improve profitability; and (d) prepared a business plan. <u>Id.</u>

Petitioners did not prepare a business plan or advertise the deer hunting preserve. Petitioners did not keep cattle or deer during the years at issue. Petitioners had purchased property used in the cattle and deer activity from 1988 to 2006 and knew by the years at issue that raising cattle was no longer a profitable venture. They also had determined that the deer hunting preserve involved too much risk to pursue. Petitioners provided no evidence that during the years at issue they attempted to change course to make the activity profitable. Petitioners kept a bank account for the activity and tracked depreciation expenses, but on the instant record the Court cannot conclude that petitioners carried on the activity in a businesslike manner. Accordingly, this factor favors respondent.

**[\*31]**  2.  Expertise of the Taxpayer

"The taxpayer's expertise, research, and extensive study of an activity, as well as his or her consultation with experts, may indicate a profit motive." Mathis v. Commissioner, T.C. Memo. 2013-294, at \*10; sec. 1.183-2(b)(2), Income Tax Regs. Petitioners did not have any expertise in developing a deer hunting preserve and did not hire an expert to advise them. Instead they relied on acquaintances for informal advice. Mr. McMinn had experience raising cattle while growing up, but that experience taught him that by the years at issue raising cattle was not a profitable business. Accordingly, this factor favors respondent.

3.  Time and Effort Allocated to Activity

The taxpayer's devotion of much of his or her personal time and effort to carrying on an activity may indicate a profit motive, particularly if the activity does not involve substantial personal or recreational aspects. Sec. 1.183-2(b)(3), Income Tax Regs. The time and effort spent on an activity that has substantial personal and recreational aspects may be due to a taxpayer's enjoyment of the activity rather than the taxpayer's objective of making a profit. Rinehart v. Commissioner, T.C. Memo. 1998-205, slip op. at 9-10.

Petitioners did not provide any details about the amount of time spent on the cattle and deer activity. Their embroidery business was successful during the

[*32] years at issue, and the Court finds that they spent most of their time on that business and they did not spend significant time on developing the deer hunting preserve. Neither did they ever obtain the required permit to carry out the deer hunting preserve. Accordingly, this factor favors respondent.

### 4. The Expectation That Assets Used in the Activity May Appreciate in Value

An expectation that assets used in the activity may appreciate in value may indicate a profit objective even if the taxpayer derives no profit from current operations. Sec. 1.183-2(b)(4), Income Tax Regs. However, the Court may infer a profit objective from such expected appreciation only when the appreciation exceeds operating expenses and would be sufficient to recoup the accumulated losses of prior years. Foster v. Commissioner, T.C. Memo. 2012-207, slip op. at 19; see Golanty v. Commissioner, 72 T.C. at 427-428.

Petitioners purchased the first parcel of land for the cattle and deer activity for $100,000, and after the years at issue, the property was listed for sale at $4.4 million, but petitioners had not sold it. Although the record does not indicate the purchase price of the other parcels, petitioners' tax returns show that the total cost basis in the assets for the activity did not exceed $225,000. Petitioners did not testify that there was an expectation that the land would appreciate; however, the

**[*33]** Court may infer this when the appreciation exceeds the losses accumulated in prior years. Because petitioners' property substantially appreciated in excess of the losses, this factor favors petitioners.

      5.      Success of Taxpayer in Carrying On Other Related Businesses

Section 1.183-2(b)(5), Income Tax Regs., provides: "The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable."

Petitioners did not prove that they have had success in similar activities. They presented no evidence that they have ever operated a successful deer hunting preserve. They are successful entrepreneurs and had developed a successful embroidery machine business but failed to prove that they were successful in a business related to a deer hunting preserve or raising cattle. Accordingly, this factors favors respondent.

      6.      The Taxpayer's History of Income or Loss With Respect to the Activity and the Amount of Occasional Profit, If Any[18]

A history of continued losses with respect to an activity may indicate that the taxpayer lacked a profit objective. See id. subpara. (6). The amounts of profits

---

[18]The Court considers together the two factors in the heading.

[*34] in relation to the amounts of losses incurred may provide evidence of the taxpayer's intent. See id. subpara. (7). Although a series of losses during the initial or startup stage of an activity may not necessarily indicate a lack of profit motive, a record of large losses over many years is persuasive evidence that the taxpayer did not have such a motive. Golanty v. Commissioner, 72 T.C. at 426.

Petitioners' cattle and deer activity had net losses of $18,155, $6,751, and $9,590, respectively, for the years at issue. Petitioners enrolled 22.5 acres of the land in a Federal conservation program, and most of the gross receipts that they reported for the cattle and deer activity were received from that program on the condition that petitioners keep the land clear of crops and harvesting.[19] Petitioners had a total gross income during the years at issue of $3,142. Accordingly, these factors favor respondent.

---

[19]In Morehouse v. Commissioner, 769 F.3d 616 (8th Cir. 2014), rev'g and remanding 140 T.C. 350 (2013), the U.S. Court of Appeals for the Eighth Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), held that conservation reserve program payments were not subject to self-employment tax when the taxpayer did not actively operate a farming business. The parties did not dispute petitioners' self-employment tax liability with respect to the cattle and deer activity. Petitioners reported self-employment tax for 2006 only with respect to the Juice Plus business. Additionally, although the activities on the 22.5 acres of land enrolled in the conservation program may have been conducted with a profit objective, petitioners did not argue that this was a separate activity. In fact, petitioners reported income and expenses for the entire property on the same Schedules F for the years at issue. Accordingly, the Court considers the activity in its entirety.

**[*35]**      7.      <u>The Financial Status of the Taxpayer</u>

Substantial income from sources other than the activity may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. A taxpayer with substantial income unrelated to the activity can more readily afford a hobby. <u>Foster v. Commissioner</u>, slip op. at 21. This is particularly true if the losses from the activity might generate substantial tax benefits. <u>Golanty v. Commissioner</u>, 72 T.C. at 429.

Because petitioners had substantial income from their embroidery business, they could afford a hobby with losses that offset other income. Accordingly, this factor favors respondent.

      8.      <u>Whether Elements of Personal Pleasure or Recreation Are Involved</u>

The presence of personal motives and recreational elements in carrying on an activity may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(9), Income Tax Regs. Petitioners' residence was surrounded by the land used for the cattle and deer activity, and they were able to use it for personal enjoyment and recreation. Accordingly, this factor favors respondent.

**[*36]**    9.    Conclusion

On the record before us, the Court concludes that petitioners have failed to prove that they engaged in the cattle and deer activity with the objective of making a profit. Although the land used for the activity appreciated substantially, petitioners spent little time on the activity, had no expertise in the activity, received little income compared to the amounts of the losses, had the resources to incur the losses, and received personal benefits from the activity. Accordingly, respondent's determination is sustained.

B.    Resort Activity

Respondent disallowed petitioners' claimed losses for their resort activity, Spring Lake Resort, for the years at issue of $8,412, $3,938, and $1,181, respectively, because petitioners failed to prove that they engaged in the activity with a profit objective. After careful consideration of the factors in section 1.183-2(b), Income Tax Regs., the Court finds that petitioners did not engage in the resort activity with the objective of making a profit. The Court's analysis follows the same analysis used for the cattle and deer activity above. See supra part I.A.

1.    Manner in Which the Taxpayer Carries On Activity

Petitioners did not have a written business plan for the resort activity and petitioners did not conduct a financial analysis of the activity. They did not

**[*37]** maintain separate books and records or a separate bank account for the resort activity. However, they maintained depreciation schedules for tax reporting purposes. They did not publicly advertise the resort activity, and there were no road signs indicating the existence of a resort. Accordingly, this factor favors respondent.

### 2. Expertise of the Taxpayer

Petitioners did not have any expertise in developing a resort and did not hire an expert to advise them. Accordingly, this factor favors respondent.

### 3. Time and Effort Allocated to Activity

Petitioners did not provide any evidence about the amount of time spent developing the resort. Petitioners had a successful embroidery business, and the Court finds that their time was spent primarily on that business. Accordingly, this factor favors respondent.

### 4. The Expectation That Assets Used in the Activity May Appreciate in Value

Petitioners did not prove that they had an expectation that the assets used for the resort activity would appreciate. Neither did they prove that the assets did appreciate, but presumably the property did appreciate because petitioners took several steps to improve it, spending approximately $95,000 on improvements.

[*38] However, the appreciation also benefited petitioners personally because their new residence was near the resort's lake and their trust owned the property. Accordingly, this factor is neutral at best.

5.      Success of Taxpayer in Carrying On Other Related Businesses

Petitioners did not prove that they had been successful in similar activities. They presented no evidence that they had ever operated a successful resort. They were successful entrepreneurs, who had created a successful embroidery business, but they failed to prove that they were successful in businesses related to a resort. Accordingly, this factor favors respondent.

6.      The Taxpayer's History of Income or Loss With Respect to the Activity and the Amount of Occasional Profits, If Any

The resort activity showed a loss for each of the years at issue. Petitioners contend that the resort made a profit in later years from renting out the property for weddings, but they provided no documentary evidence to prove this claim. Additionally, for the years at issue the resort had minimal gross receipts totaling $2,105. Accordingly, these factors favor respondent.

7.      The Financial Status of the Taxpayer

Petitioners have substantial income from their embroidery business but only minimal income from the resort activity. Because their embroidery business had

[*39] such substantial income, they could afford a hobby with losses that offset some of their other income. Accordingly, this factor favors respondent.

8.      Whether Elements of Personal Pleasure or Recreation Are Involved

Petitioners renovated the resort property extensively by adding a pavilion with three campsites, restroom facilities, jet ports, decks, docks, fire rings, a bridge, fish pads, auto fish feeders, and a dam. They built a personal residence near the resort's lake. They used the lake for personal pleasure and owned jet skis to use on the lake. Additionally, they used their motor home less because the family could use the resort. Thus, the resort had significant elements of personal pleasure and recreation. Accordingly, this factor favors respondent.

9.      Conclusion

On the record before us, the Court concludes that petitioners have not proved that they engaged in the resort activity with the objective of making a profit. Although the land used for the activity may have appreciated, petitioners spent little time on the activity, had no expertise in the activity, received little income compared to the amount of the losses, had the resources to incur the losses, and received significant personal pleasure and recreation from the activity.

**[\*40]** Accordingly, respondent's determination with respect to the resort activity is sustained.

## II.    Business Expense Deductions

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed on a return. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 162(a) permits a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Welch v. Helvering, 290 U.S. at 113. An expense is ordinary if it is customary or usual within a particular trade, business, or industry. Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Additionally, for a deduction under section 162, the expenditure must be "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. No deduction is allowed for personal, living, or family expenses. Sec. 262(a).

With respect to the deductibility of salaries, section 162(a) requires not only that the expense be ordinary and necessary but also that the amount be reasonable "for personal services actually rendered" to the payer. Sec. 162(a)(1) (emphasis

**[*41]** added).  When an amount deducted as wages involves a familial relationship, this Court closely scrutinizes the transaction to determine whether there is a bona fide employer-employee relationship and whether payments were made for services actually performed for the business.  See Denman v. Commissioner, 48 T.C. 439, 450 (1967).  This is particularly true when the deduction is attributable to payments from a parent to the parent's child.  A normal supposition when payments are made to dependent children or when items are purchased by a parent for dependant children is that the money or items are in the nature of support and nondeductible.  See sec. 262; Holtz v. Commissioner, T.C. Memo. 1982-436, 44 T.C.M. (CCH) 640, 643 (1982).  However, a payment made to minor children by a parent for services rendered in connection with the parent's trade or business might very well qualify as a business expense deduction.  See Denman v. Commissioner, 48 T.C. at 448-451.

In addition to the general business expense deduction rule of section 162, section 167(a) permits a deduction for depreciation from the exhaustion and wear and tear of property used in a trade or business.  Alternatively, a taxpayer may elect to treat the cost of certain property used in an active trade or business as a current expense in the year that property is placed in service.  Sec. 179(a), (d).

[*42] Section 163(a) permits a deduction for all interest paid or accrued within the taxable year on indebtedness. Section 163(h)(1), however, provides that, in the case of a taxpayer other than a corporation, no deduction is allowed for personal interest. Investment interest is not included in the definition of personal interest. See sec. 163(h)(2)(B). Investment interest generally means "any interest * * * which is paid or accrued on indebtedness properly allocable to property held for investment." Sec. 163(d)(3)(A). For noncorporate taxpayers, investment interest is deductible only to the extent of the taxpayer's net investment income for the taxable year. Sec. 163(d)(1).

A taxpayer ordinarily must maintain adequate records to substantiate the amounts of income and entitlement to any deductions claimed. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. If, however, a taxpayer with inadequate or nonexistent business records is able to prove that it paid or incurred a deductible business expense but does not prove the amount of the expense, the Court may estimate the amount allowable in some circumstances (Cohan rule). See Cohan v. Commissioner, 39 F.2d 540, 542-544 (2d Cir. 1930). The taxpayer must introduce sufficient evidence to permit the Court to conclude that the taxpayer paid or incurred a deductible expense in at least the amount allowed. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85

**[*43]** T.C. 731, 743 (1985).  In estimating the amount allowable, the Court bears heavily upon the taxpayer who failed to maintain required records and to substantiate expenses as the Code requires.  See Cohan v. Commissioner, 39 F.2d at 544.

Under section 274(d), a taxpayer must satisfy strict substantiation requirements before a deduction is allowed for certain items.  To deduct expenses related to travel, meals and entertainment, gifts, or listed property, the taxpayer must substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement:  (1) the amount of the expense (e.g., mileage); (2) the time and place of the expense; (3) the purpose of the expense; and (4) in the case of entertainment, the business relationship between the taxpayer and the person being entertained.  Sec. 274(d); see Shea v. Commissioner, 112 T.C. 183, 187 (1999).  Listed property includes passenger automobiles, property used as a means of transportation, "property of a type generally used for purposes of entertainment, recreation, or amusement," computers, and any other property of a type specified by the Secretary by regulations.  Sec. 280F(d)(4)(A).  Listed property does not include property used as a means of transportation when substantially all of the use of the property "is in a trade or business of providing to unrelated persons services consisting of the transportation of persons or property for compensation

**[*44]** or hire." See sec. 280F(d)(4)(C). Another exception to the strict substantiation requirements of section 274(d) is available for a "qualified nonpersonal use vehicle", which is "any vehicle which, by reason of its nature, is not likely to be used more than a de minimis amount for personal purposes." Sec. 274(d), (i).

Although the Cohan rule is not applicable to expenses under section 274(d), see Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969), a taxpayer may substantiate an expense under section 274(d) by "his own statement, whether written or oral, containing specific information in detail" about them and by "other corroborative evidence sufficient to establish" them, sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

A.    Embroidery Express

Respondent disallowed deductions that Embroidery Express claimed for depreciation expenses of $4,900, $4,487, and $5,560 for fiscal years ending June 30, 2005 through 2007, respectively, and interest expenses of $1,525, $1,970, and $1,688 for fiscal years ending June 30, 2005 through 2007, respectively, arising from three passenger automobiles. The Court must therefore determine whether Embroidery Express is entitled to the claimed deductions.

[*45] The three passenger automobiles are: a 2004 BMW, a Toyota Avalon, and a Toyota Corolla. The passenger automobiles are listed property, see sec. 280F(d)(4)(A)(i), and thus Embroidery Express must satisfy the strict substantiation requirements of section 274(d) to deduct the expenses. Embroidery Express did not produce a mileage log for the vehicles. Mr. McMinn vaguely testified that he used the BMW to pick up clients from the airport and entertain them. Although the Court finds Mr. McMinn's testimony credible with respect to the BMW, his explanation is insufficient to satisfy the strict substantiation requirements under section 274(d). Mr. McMinn did not explain the uses for the Toyota Avalon or Toyota Corolla. Therefore, respondent's determination is sustained.

      B.    <u>Advanced Embroidery Supply</u>

Respondent disallowed petitioners' deductions for wages that Advanced Embroidery Supply paid to their children, K.M., Travis, Dylan, and Courtney.[20] Advanced Embroidery Supply paid petitioners' children $46,516, $50,913, and $64,650 during the years at issue, respectively. The children reported the wages on their own tax returns using Forms W-2 that Advanced Embroidery Supply

---

[20]Petitioners' other children also received wages from petitioners' other entities. Courtney also received wages from Embroidery Services. Respondent did not disallow deductions for these wages.

**[\*46]** issued.  The Court must determine whether petitioners are entitled to the business expense deductions for the children's wages.

As stated above, section 162(a) requires not only that the wage expenses be ordinary and necessary but also that the amounts be reasonable "for personal services <u>actually</u> rendered" to the payer (i.e., Advanced Embroidery Supply).  Sec. 162(a)(1) (emphasis added).  Reasonable compensation is determined by comparing the compensation paid to an employee with the value of the services performed in return.  <u>Haffner's Serv. Stations, Inc. v. Commissioner</u>, T.C. Memo. 2002-38, slip op. at 21, <u>aff'd</u>, 326 F.3d 1 (1st Cir. 2003).  When an amount deducted as wages involves a familial relationship, as it does in this case, this Court closely scrutinizes the transaction to determine whether there is a bona fide employer-employee relationship and whether payments were made for services actually performed for the business.  <u>See</u> <u>Denman v. Commissioner</u>, 48 T.C. at 450.  The Court will therefore closely scrutinize the wages paid to the children and determine whether those wages were reasonable.

Courtney had completed school and was a full-time employee during the years at issue.  Courtney was 17 in 2004, older than the other children, and not a dependent of petitioners.  K.M., Dylan, and Travis were still in school and could work only after school.  Because the Court finds that the arrangement with

**[*47]** Courtney was different from arrangements with the other children, the Court will analyze the wages paid to Courtney separately from those paid to the other children.

### 1. K.M., Dylan, and Travis

Mr. McMinn credibly testified about the work the children performed. K.M. cleaned the office of petitioners' embroidery business, assisted with inventory, and helped clean embroidery machines. Dylan and Travis assisted with repairs to embroidery machines, delivery of the machines, and lawn care. Although petitioners paid their children by the job, they failed to maintain adequate records to substantiate the expenses.[21] Petitioners did not present any documentary evidence proving the nature or frequency of the jobs the children completed throughout the years at issue. Petitioners would have presumably maintained such records if the amounts paid at yearend were for jobs that the children had completed during that year. However, because the Court finds that petitioners' children performed some work for petitioners' embroidery business

---

[21]Respondent objects on the grounds of relevance to the admission of undated timecards that petitioners seek to have admitted into evidence. Petitioners did not argue on brief why the timecards are relevant, nor did they rely on them in their argument. The timecards do not describe the work that the children completed, nor do they state when the work was completed. The Court does not rely on the timecards in its analysis and will therefore overrule respondent's objection as moot.

**[\*48]** but petitioners failed to maintain adequate records that prove the amount of work the children completed, the Court will attempt to determine whether there is a sufficient basis to estimate the amount of reasonable compensation and allow deductions accordingly. See Cohan v. Commissioner, 39 F.2d at 542-544.

Mr. McMinn and three of petitioners' children testified regarding the children's work. Some testimony about the children's work was corroborated by an unrelated party. The Court finds this testimony credible to establish that the children actually worked for petitioners' embroidery business and that the children were paid by the job. On the basis of the record and after considering each child's education, skills, and available time for their ages, the Court finds that the amounts paid throughout the first 11 months of the year were reasonable for the work each child completed for petitioners' embroidery business.[22] Petitioners are therefore allowed to deduct those payments. The Court's further inquiry will focus on payments to the children in December of each year.

---

[22]Dylan and Travis also provided significant lawn care services that took at least two days a week. Petitioners failed to prove whether the embroidery business required lawn services or whether the lawn services were for petitioners' other activities. The Court has already found that petitioners' other activities were not operated for profit, see supra part I, and therefore deductions for wages would be limited, see sec. 183(b)(2). Because petitioners are allowed to deduct only minimal wages for Dylan and Travis and the two children provided services other than lawn care, the Court is satisfied that the allowed amounts were for services actually provided to petitioners' embroidery business.

[*49] The children were generally paid small amounts throughout the year for the jobs that they completed, and bonuses in December of each year. Petitioners placed little economic value on the jobs their children completed throughout the year but paid them significant bonuses at yearend, partially on the basis of the performance of petitioners' embroidery business. Although Mr. McMinn testified that he paid the children on the basis of what he would pay an unrelated party, petitioners introduced no evidence proving that an unrelated party would receive a similar bonus for the same work. The bonuses were the largest part of the children's wages and were paid at yearend after petitioners had the opportunity to determine the financial status of the business. The Court is therefore not convinced that unrelated parties would act similarly.

Although the children had access to the money that they received, they were required to save certain amounts and tithe other amounts, and they were allowed to spend some amounts. K.M., Dylan, and Travis were also claimed as petitioners' dependents. The record thus supports a finding that the bonuses were not typical of a bona fide employer-employee relationship but were partially for familial support of petitioners' dependent children. However, because the Court is convinced that the children did work for petitioners' embroidery business and the wages paid throughout the year adequately represent each child's services,

[*50] petitioners are allowed to deduct the average of the child's other monthly payments in that year, and the remaining balance of the December payments is disallowed.[23]

Petitioners did not provide an itemized accounting of the wages paid or the dates those wages were paid to the children in 2005. Petitioners introduced copies of two checks to Dylan and one check to Travis for 2005. Petitioners are allowed to deduct the payments to Dylan of $165 and $2,000 on May 23 and October 28, 2005, respectively. The payment to Travis was for $4,800 on December 9, 2005. This yearend payment is not deductible for the same reasons addressed above, and the deduction will be limited to the average allowed deduction for Travis' wages in 2004 and 2006.[24] The remaining deductions for wage expenses for 2005 are

---

[23]Petitioners made bonus payments to the children December 22, 2004 and 2006. Deductions for these payments are disallowed but for an average monthly payment amount determined for each child. Petitioners are allowed to deduct $350 (payments in the first 11 months to K.M. in 2006: $200 + 500 + 350 = $1,050 / 3 = $350) of the $10,000 yearend payment to K.M. in 2006. For Dylan petitioners are allowed to deduct $105.63 for 2004 and $1,075 for 2006 of the yearend payments. For Travis petitioners are allowed to deduct $97.50 for 2004 and $1,075 for 2006 of the yearend payments.

[24]Travis completed similar work for each of the years at issue. Because the work during 2005 is substantially similar to the work in 2004 and 2006, petitioners are entitled to deduct the average of the allowed wage deductions of 2004 and 2006 for 2005. The Court has allowed total wage deductions of $292.50 for 2004 and $5,375 for 2006. Petitioners are therefore allowed to deduct $2,833.75 for

(continued...)

[*51] disallowed because petitioners did not prove that they incurred any additional wage expenses.[25]

### 2.     Courtney

Before the years at issue Courtney had completed her home schooling, and during the years at issue she worked full-time for petitioners.  She acted as a receptionist for petitioners' embroidery business, sorting the mail, answering calls, and scheduling appointments.  She would also prepare documents for the transportation of embroidery machines.  In 2004 Courtney received wages of $110, $3,000, $12,000, and $13,000 on April 9, October 25, December 22, and December 24, respectively, for a total of $28,110.  Advanced Embroidery Supply paid her wages of $5,000 in 2005 and did not pay her wages in 2006.

The Court finds that Courtney was petitioners' full-time employee.  Although petitioners paid her in an unusual fashion, Courtney and Mr. McMinn both credibly testified regarding her duties for petitioners' embroidery business.  Petitioners paid Courtney on the basis of what they had paid former secretaries.  She was not claimed as a dependent of petitioners for any of the years at issue, and

---

[24](...continued)
2005.

[25]The Court also allows $5,000 of wage deductions for Courtney in 2005.  See infra part II.B.2.

[*52] she married in 2006. For the amount of work Courtney completed as a full-time employee, the wages paid were not unreasonable. Petitioners may therefore claim business expense deductions for wages paid to Courtney.

C.     Stitch It

Respondent disallowed depreciation expense deductions that Stitch It claimed because petitioners failed to properly substantiate the deductions for a motor home, motor home equipment, a 2005 Chevy Equinox, a 2005 green Chevy Silverado, a 2005 blue Chevy Silverado, and a 2005 black Chevy truck. Respondent also disallowed deductions for home and cell phones, property taxes, motor home repair and maintenance, airline tickets, satellite TV, and lawn care as personal expenses. The Court must determine whether petitioners are entitled to the deductions.

1.     Depreciation Deductions

Respondent disallowed depreciation deductions that petitioners reported on Schedules K-1 from Stitch It attached to their Federal income tax returns for the years at issue. Stitch It claimed depreciation deductions for a motor home and equipment, a 2005 Chevy Equinox, a 2005 green Chevy Silverado, a 2005 blue Chevy Silverado, and a 2005 black Chevy truck.

**[*53]** All of the vehicles are listed property, see sec. 280F(d)(4)(A)(i) and (ii), and subject to the strict substantiation requirements of section 274(d). Petitioners contend that the vehicles are not listed property because the vehicles were substantially used "in a trade or business of providing to unrelated persons services consisting of the transportation of persons or property for compensation or hire." See sec. 280F(d)(4)(C). The Court considers whether each of the vehicles meets this exception below.

The motor home and equipment were used while petitioners were traveling to approximately 14 conventions and auctions annually to buy and sell embroidery machines. Petitioners would attach a trailer to the motor home to transport the embroidery machines that they purchased or intended to sell. The motor home was also used for personal recreation. Although Mr. McMinn testified that the motor home was used less for personal recreation after the resort was built, petitioners' business use of the motor home appears to be minimal because petitioners attended only 14 conventions a year and did not provide any documentation as to location or dates; i.e., convention or booth registration. Therefore, the record does not allow the Court to conclude that the motor home and equipment were substantially used in petitioners' business for "providing to unrelated persons services consisting of transportation of persons or property for

[*54] compensation or hire." See sec. 280F(d)(4)(C). Accordingly, the motor home and equipment are listed property. See sec. 280F(d)(4)(A)(ii).

Petitioners did not provide a mileage log for the motor home and have provided no evidence that complies with the substantiation requirements of section 274(d). Mr. McMinn testified generally about the number of conventions he attended and some of the conventions' locations, but his testimony alone is insufficient to substantiate the depreciation expenses. Respondent's determination with respect to the motor home is therefore sustained.

The 2005 Chevy Equinox was driven primarily by Mr. McMinn. Petitioners did not present any evidence about the use of this vehicle and did not provide any evidence that satisfies the requirements of section 274(d). Because petitioners presented no evidence of the vehicle's use, it is listed property and subject to the strict substantiation requirements of section 274(d). Accordingly, respondent's determination is sustained.

The three trucks were used to transport embroidery machines. Petitioners transported approximately 300 to 500 embroidery machines a year. Petitioners would purchase an embroidery machine and transport it to their warehouse to refurbish it. After it was refurbished, they would sell it and transport it for the buyer. They would also provide transportation services to embroidery companies.

[*55] A client of petitioners testified that he hired petitioners to transport his embroidery machines. Petitioners' children transported the embroidery machines and had their own personal vehicles so they did not need to drive the trucks for personal use. The Court therefore finds that the three trucks meet the section 280F(d)(4)(C) exception and are not listed property.

Because the three trucks are not listed property, the Court may estimate the expense that petitioners incurred. See Cohan v. Commissioner, 39 F.2d at 542-544. The Court finds that petitioners presented sufficient evidence for the Court to determine that the claimed depreciation deductions were reasonable and petitioners actually incurred the expenses. Petitioners' embroidery business was very successful, and required the movement of hundreds of embroidery machines. The expenses of three trucks are reasonable for the size of petitioners' business. Although Mr. McMinn testified that mileage logs were created, those logs were not offered into evidence. However, the Court heard testimony from Mr. McMinn, four of petitioners' children, and an unrelated client that hired petitioners to transport embroidery machines. The Court finds that testimony credible to establish that the trucks were used in the embroidery business. Accordingly, petitioners are entitled to deduct the depreciation expenses with respect to the three trucks.

**[\*56]**      2.      <u>Personal Expenses</u>

Personal expenses are generally not deductible.  <u>See</u> sec. 262(a).

Respondent determined that Stitch It deducted expenses for home and cellular

phones, property taxes, motor home repair and maintenance, airline tickets,

satellite TV, and lawn care as business expenses that are actually personal

expenses.  The Court must determine whether petitioners are entitled to the

deductions.

Cellular phones, airline tickets, and motor homes are all subject to the strict

substantiation requirements of section 274(d).[26]  <u>See</u> secs. 274(d), 280F(d)(4)(A).

The Court considers whether petitioners complied with the requirements of section

274(d).

Respondent disallowed business expense deductions for cellular phone

expenses of Mrs. McMinn, petitioners' daughter Courtney, and a subcontractor.

Petitioners did not produce logs showing personal and business use of the cellular

phones.  Because cellular phones are listed property, <u>see</u> sec. 280F(d)(4)(A)(v),

and petitioners presented no evidence that complies with the section 274(d)

---

[26]For taxable years beginning after December 31, 2009, cellular phones are
no longer in the definition of listed property in sec. 280F(d)(4), which was
amended by the Small Business Jobs Act of 2010, Pub. L. No. 111-240, sec.
2043(a), 124 Stat. at 2560.  Because the years at issue are before 2009, petitioners'
cellular phones are subject to the strict substantiation requirements of sec. 274(d).

**[\*57]** requirements, respondent's determination with respect to the cellular phones is sustained.

Petitioners claimed business expense deductions for airline tickets. Airline tickets are subject to the strict substantiation requirements of section 274(d). Sec. 274(d)(1). Petitioners provided no evidence about the airline tickets, such as the purpose of any trips, the dates, or the locations. Petitioners failed to properly substantiate the expenses. Accordingly, respondent's determination is sustained.

Petitioners claimed business expense deductions for motor home repairs and maintenance. The motor home is listed property. See sec. 280F(d)(4)(A)(ii). The Court has already disallowed petitioners' depreciation deductions for the motor home because petitioners failed to satisfy the strict substantiation requirements of section 274(d). See supra part II.D.1. Because petitioners must satisfy the strict substantiation requirements in order to claim a deduction with respect to the motor home, respondent's determination is sustained.

Petitioners claimed business expense deductions for property taxes, a home phone, and lawn care that are not listed property, but they must maintain adequate records to substantiate the expenses or provide the Court some basis to estimate them. See Cohan v. Commissioner, 39 F.2d at 544. Petitioners provided no

[*58] evidence regarding the property tax expense[27] and the lawn care expense.[28]

Mr. McMinn testified that he needed a phone at his house for business purposes; however, respondent allowed business expense deductions for a business cellular phone. Mr. McMinn provided no evidence as to why the cellular phone was inadequate nor did he provide documentary evidence showing that his home had multiple phone lines. See sec. 262(b) (treating the first phone line in a residence as a personal expense and not deductible). Accordingly, respondent's determinations with respect to the property taxes, home phone, and lawn care are sustained.

With respect to the satellite television, petitioners had satellite television available in the reception area of their office for clients to enjoy while waiting for appointments. Petitioners also had satellite television in their home. Petitioners provided no evidence except Mr. McMinn's testimony that the satellite television had different receivers to show that the bills were separate and that this was not a personal expense. See sec. 262(a) (disallowing personal expenses). Additionally,

---

[27]Property taxes are generally deductible, see sec. 164, but petitioners provided no evidence as to whether, for example, Stitch It owned the property or they owned the property that incurred the liability or the nature of the property.

[28]Petitioners' activities that were not operated with a profit objective, see supra part I, required lawn care. If some of these lawn care expenses are for those activities, they would not be deductible for Stitch It.

**[\*59]** petitioners have not shown that this expense was ordinary and necessary for their business.  See sec. 162(a).  Accordingly, respondent's determination is sustained.

D.    Embroidery Services

Respondent disallowed deductions for interest expenses for land in Patton, Missouri, and for a 1999 Toyota Tacoma with respect to Embroidery Services. The Court must therefore determine whether petitioners are entitled to the disallowed deductions.

The 1999 Toyota Tacoma was driven primarily by petitioners' son Kyle McMinn.  Although vehicles are generally listed property, see sec. 280F(d)(4)(A)(ii), and subject to the strict substantiation requirements of section 274(d), an exception applies if substantially all of the use of a vehicle is in a trade or business of providing unrelated persons services consisting of the transportation of persons or property for compensation or hire, see sec. 280F(d)(4)(C).  The 1999 Toyota Tacoma along with the three Stitch It trucks were used to transport embroidery machines.  The Court has found that the three Stitch It trucks were not subject to the strict substantiation requirements of section 274(d).  See supra part II.D.1.  For the same reasons, the Court finds that the 1999 Toyota Tacoma is not subject to the strict substantiation requirements.

**[\*60]** Because the 1999 Toyota Tacoma is not listed property, the Court may estimate the allowable expense.  See Cohan v. Commissioner, 39 F.2d at 542-544.  Embroidery Services allocated 80% of the cost of the 1999 Toyota Tacoma as a business expense and 20% as a personal expense.  Petitioners' business required moving embroidery machines with trucks and trailers around 600 to 1,000 times a year.  Petitioners had a substantial embroidery business, and the use of four trucks appears reasonable for the transportation of the embroidery machines.  On the basis of the record, the Court finds that the interest expense deductions for the 1999 Toyota Tacoma were reasonable as claimed, and petitioners are therefore entitled to the disallowed interest deductions.

Respondent also disallowed interest deductions relating to land in Patton, Missouri.  Petitioners contend that Embroidery Services is entitled to deductions for interest expenses under section 163(h)(2)(B) because the land was held as an investment.  Mr. McMinn testified that he had purchased the land with the intent of selling it in parcels.  However, petitioners' trust owned the land during the years at issue, and the land was not conveyed to Embroidery Services.  Because Embroidery Services does not have an ownership interest in the land, it is not entitled to deductions for interest expenses.

[*61] Petitioners may individually be entitled to deductions for the interest if they can prove the property was held as an investment. Petitioners failed to present any documentary evidence showing an investment motive. Petitioners did not present any evidence that parcels of the property had been sold or listed for sale. The record includes only a bank receipt with a handwritten notation that acreage was sold to Bryan McMinn. The bank receipt does not state exactly what acreage was sold or whether it was the property at issue. Petitioners have thus failed to prove that the land was held as an investment. Accordingly, respondent's determination with respect to the interest expense deductions for the land is sustained.

### E.    Juice Plus

Respondent disallowed depreciation deductions for a 2006 Toyota Sequoia, a computer, and exercise equipment claimed on petitioners' Federal income tax returns with respect to Juice Plus for the years at issue. The Court must therefore determine whether petitioners are entitled to the deductions.

Respondent's revenue agent believed that the 2006 Toyota Sequoia was used in the Juice Plus business and allowed petitioners standard mileage rate deductions. Petitioners did not keep a contemporaneous mileage log for the 2006 Toyota Sequoia. Mr. McMinn testified that his wife needed the vehicle to attend presentations for Juice Plus. The 2006 Toyota Sequoia is a passenger automobile

[*62] and therefore is listed property.  See sec. 280F(d)(4)(A)(i).  Petitioners'

explanation is insufficient to meet the strict substantiation requirements under

section 274(d), and therefore they are not entitled to depreciation deductions for

the 2006 Toyota Sequoia greater than the amounts that respondent allowed.[29]

Respondent disallowed depreciation expense deductions for a computer

because petitioners did not prove that Juice Plus actually incurred the expense.

The invoice for the computer is addressed to Stitch It.  Computers are listed

property, see sec. 280F(d)(4)(A)(iv),[30] and subject to the strict substantiation

requirements of section 274(d).  Petitioners presented no evidence that would

satisfy the section 274(d) requirements.  Additionally, they failed to prove that

_____

[29]Petitioners also claimed depreciation expense deductions for a 2004
Toyota Highlander with respect to Juice Plus during the years at issue.  The Court
is unable to determine whether respondent disallowed the depreciation expense
deductions with respect to this vehicle.  If so, petitioners did not provide any
evidence, such as a mileage log, with respect to this vehicle, and the depreciation
expense deductions would be disallowed.

[30]Computers are not listed property if they are used exclusively at a regular
business establishment and are owned or leased by the person operating the
establishment.  Sec. 280F(d)(4)(A)(iv); Whalley v. Commissioner, T.C. Memo.
1996-533, slip op. at 24.  A home office is treated as a regular business
establishment only if the home office is exclusively used on a regular basis as the
taxpayer's principal place of business or as a place of business in which the
taxpayer meets patients, clients, or customers within the course of the taxpayer's
business.  Secs. 280F(d)(4)(B), 280A(c)(1)(A) and (B).  Petitioners do not argue
that this exception applies, and the Court finds that it does not apply because Juice
Plus did not purchase the computer.

[*63] Juice Plus incurred the expense of purchasing the computer. Stitch It purchased the computer and would be entitled to a deduction, but petitioners also failed to prove that the computer was used in Stitch It's business. Accordingly, respondent's determination with respect to the computer is sustained.[31]

Respondent disallowed depreciation deductions claimed for exercise equipment because petitioners did not prove that the expenses were for a business purpose. See sec. 262 (disallowing deductions for personal, living, or family expenses). Mrs. McMinn, the primary operator of Juice Plus, was not a personal trainer, although she was studying to become one.[32] Petitioners contend that the equipment was used to promote the nutritional products of Juice Plus and that clients were charged to use the equipment. Petitioners did not provide any documentary evidence proving that clients used the equipment, nor did they advertise a gym. Their primary purpose in purchasing the exercise equipment was for Mrs. McMinn to become a personal trainer and not as a marketing tool for Juice Plus. Accordingly, they have failed to prove that the exercise equipment

---

[31]Petitioners purchased a second computer for Juice Plus on February 15, 2005. Neither party provided any evidence or argument with respect to the second computer. The Court therefore does not address it.

[32]Expenses of a taxpayer that qualify him or her for a new trade or business are not deductible as business expenses. Sec. 1.162-5(b)(3), Income Tax Regs.

**[*64]** was purchased for a business purpose. Respondent's determination is sustained.

III.    Loss From the Sale of the Motor Home

Section 165(a) generally permits a taxpayer to claim as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise." However, section 165(c) limits the scope of this deduction for individuals. Individuals may deduct only losses incurred in a trade or business, losses incurred in transactions entered into for profit, and certain casualty and theft losses. Sec. 165(c)(1)-(3). Additionally, section 274(d) limits deductions for listed property.

Petitioners sold their motor home and equipment in 2006 and claimed a loss deduction. Respondent disallowed the deduction because petitioners failed to prove that the motor home and equipment were used in a trade or business. The Court has previously held that the motor home and equipment are subject to the strict substantiation requirements of section 274(d). See supra part II.D.1. Because petitioners were required to comply with the strict substantiation requirements of section 274(d) for any deduction with respect to the motor home and equipment and have failed to do so, they are not entitled to the claimed loss deduction. Accordingly, respondent's determination is sustained.

[*65] IV.     Petitioners' Charitable Contribution Deductions

Section 170(a) allows a taxpayer a deduction for any charitable contribution made in compliance with the statute.  The taxpayer is allowed the charitable contribution deduction if the charitable contribution is provided to a corporation, trust, or community chest, fund, or foundation created or organized in the United States and operated exclusively for religious or charitable purposes.  Sec. 170(c)(2).  Charitable contributions given directly to individuals for their personal benefit are deemed private gifts and are not deductible charitable contributions under section 170 because they are not given to or for the use of a charitable organization.  See, e.g., Thomason v. Commissioner, 2 T.C. 441, 443 (1943); Dohrmann v. Commissioner, 18 B.T.A. 66 (1929).  Taxpayers are also required to maintain records substantiating their contributions, in the form of a canceled check, receipt, or other reliable written record.  Sec. 1.170A-13(a), Income Tax Regs.

Section 170(f)(8)(A) provides that no deduction shall be allowed for charitable contributions of $250 or more unless the contribution is substantiated with a contemporaneous written acknowledgment from the donee organization.  The contemporaneous written acknowledgment "need not take any particular form", see Schrimsher v. Commissioner, T.C. Memo. 2011-71, slip op. at 6

**[\*66]** (quoting H.R. Conf. Rept. No. 103-213, at 565 n.32 (1993), 1993-3 C.B. 393, 443), but it must meet the requirements of section 170(f)(8)(B).  The doctrine of substantial compliance does not apply to excuse compliance with the strict substantiation requirements of section 170(f)(8)(B).  Averyt v. Commissioner, T.C. Memo. 2012-198, slip op. at 10.  If a taxpayer fails to meet the strict substantiation requirements of section 170(f)(8), the entire deduction is disallowed.  See sec. 170(f)(8)(A); Addis v. Commissioner, 374 F.3d 881, 887 (9th Cir. 2004) ("The deterrence value of section 170(f)(8)'s total denial of a deduction comports with the effective administration of a self-assessment and self-reporting system."), aff'g 118 T.C. 528 (2002).

Section 170(f)(8)(B) provides that a contemporaneous written acknowledgment must include:

> (i) The amount of cash and a description (but not value) of any property other than cash contributed.

> (ii) Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property described in clause (i).

> (iii) A description and good faith estimate of the value of any goods or services referred to in clause (ii) * * * .

A written acknowledgment is contemporaneous if the taxpayer obtains the acknowledgment on or before the earlier of the date the return was filed or the due

[*67] date (including extensions) for filing the return for the year in which the charitable contribution was made. See sec. 170(f)(8)(C).

For a charitable contribution of property other than money, a deduction is allowed for the fair market value of the property as of the date contributed. Sec. 170(e)(1)(A). However, the amount of the deduction for a charitable contribution of property must be reduced by the amount of gain which would not have been long-term capital gain, had the property been sold at its fair market value. Id. The taxpayer must also maintain a receipt from the donee organization for each item of donated property that includes the name of the donee, the date and location of the contribution, and a detailed description of the property. Sec. 1.170A-13(b)(1), Income Tax Regs. For any nonmonetary charitable contribution of $5,000 or more, the taxpayer must obtain a "qualified appraisal" for the donated property and attach a completed appraisal summary on Form 8283. Sec. 170(f)(11)(C); sec. 1.170A-13(c)(2), Income Tax Regs.

Generally, an appraisal is "qualified" if it (1) is prepared no more than 60 days before the contribution date by a "qualified appraiser" and (2) incorporates specified information, including a statement that the appraisal was prepared for income tax purposes, a description of the valuation method used to determine the

[*68] contributed property's fair market value, and a description of the specific basis for the valuation. Sec. 1.170A-13(c)(3)(i) and (ii), Income Tax Regs.

A charitable contribution deduction is allowed for unreimbursed expenditures made incident to performing services for an organization, including traveling expenses. Sec. 1.170A-1(g), Income Tax Regs. However, a taxpayer is entitled to a charitable contribution deduction for traveling expenses under section 170 only when "there is no significant element of personal pleasure, recreation, or vacation in such travel." Sec. 170(j). A taxpayer is required to substantiate travel expenses through adequate records and a contemporaneous statement that the donee organization prepares and includes a description of the services provided by the taxpayer, a statement of whether the donee organization provided goods or services for the unreimbursed expenditures, and if so, the value of those services. Sec. 1.170A-13(f)(1)(i) and (ii), Income Tax Regs.

Petitioners claimed several charitable contribution deductions during the years at issue that respondent disallowed. Respondent allowed most of the charitable contribution deductions, including the charitable contributions to Faith Tabernacle World Outreach, Youth With A Mission, Church of Corinth, and Faith Family Worship Center. The Court considers now each disallowed charitable contribution deduction.

**[\*69]** A.     Kayit's Children's Home

Petitioners claimed a charitable contribution deduction of $2,600 on their 2004 return for a donation to the Kayit's Children Home, a children's home in Mexico.  Respondent disallowed the deduction because Kayit's Children's home is not organized as a charity within the United States.  A charitable contribution deduction is allowed only if the donee is operated exclusively for religious or charitable purposes and the donee is organized in the United States.  Sec. 170(c)(2).  Because Kayit's Children's Home is not organized as a charity in the United States, respondent's determination is sustained.

B.     Children's Research Foundation

Petitioners claimed charitable contribution deductions of $112, $129, and $381 for donations to CRF in 2004.  Petitioners also claimed charitable contribution deductions of $168 and $1,356 for donations to CRF in 2005.  The parties stipulated that "[t]he Children's Research Foundation, which is linked to the Juice Plus program, is shown on the Forms 1099 issued to the McMinns."  Respondent contends that the Court should not allow the deductions because petitioners did not introduce the Forms 1099 or provide contemporaneous written acknowledgments.  See sec. 170(f)(8)(a).

[*70] A taxpayer is required to maintain for each contribution either a canceled check or a receipt from the donee organization showing the donee, the date of the contribution, and the amount of the contribution. Sec. 1.170A-13(a)(1)(i) and (ii), Income Tax Regs. In the absence of a canceled check or a receipt, a taxpayer must produce other reliable written records. Id. subdiv. (iii). Although petitioners did not introduce the Forms 1099 showing the amounts paid to CRF, the Court finds the parties' stipulation sufficient to substantiate the payments to CRF. Therefore the Court must determine whether petitioners complied with the contemporaneous written acknowledgment requirements.

A contemporaneous written acknowledgment that satisfies section 170(f)(8)(B) is required for contributions of $250 or more. Sec. 170(f)(8)(A). However, "[s]eperate contributions of less than $250 are not subject to the requirements of section 170(f)(8), regardless of whether the sum of the contributions made by a taxpayer to a donee organization during a taxable year equals $250 or more." Villareale v. Commissioner, T.C. Memo. 2013-74, at *4 n.4; sec. 1.170A-13(f)(1), Income Tax Regs. Petitioners were not required to substantiate the payments of less than $250 with a contemporaneous written acknowledgment. Therefore, the three payments of less than $250 are allowed.

**[*71]** Petitioners were required and failed to substantiate their charitable contribution deductions with contemporaneous written acknowledgments for the two payments to CRF of $250 or more. See sec. 170(f)(8). The parties' stipulation is inadequate for the Court to conclude that petitioners complied with the strict substantiation requirements of section 170(f)(8)(B), including a statement of whether goods or services were received, because the stipulation does not state what information the Forms 1099 included. The substantiation requirements of section 170(f)(8)(B) are strict, and the record does not allow the Court to conclude that information that meets the requirements of section 170(f)(8)(B) was included on the Forms 1099. Petitioners are therefore entitled to deduct the payments of $112 and $129 for 2004, and the payment of $168 for 2005. Respondent's determination with respect to the two payments to CRF of $250 or more is sustained.

      C.     R.L. Montgomery Ministries

Petitioners claimed charitable contribution deductions of $3,000, $6,300, and $2,135 for the years at issue, respectively, for donations to R.L. Montgomery Ministries. R.L. Montgomery Ministries is not a registered tax-exempt organization in the United States. R.L. Montgomery is an individual who claims to be an agent of Ranch House Ministries. Petitioners contend that they are

[*72] entitled to charitable contribution deductions for the donations to R.L. Montgomery Ministries because its operator, R.L. Montgomery, was an agent of Ranch House Ministries, which is a tax-exempt organization in the United States.

Even if the Court were to agree with petitioners that R.L. Montgomery was an agent of Ranch House Ministries, petitioners have not proven that the funds were transferred to Ranch House Ministries. Additionally, petitioners have not proven that they satisfied the contemporaneous written acknowledgment requirements of section 170(f)(8) for charitable contributions of $250 or more. Respondent's determination is therefore sustained.

D.    Office Equipment and Office Furniture

Petitioners claimed charitable contribution deductions for 2004 for the donation of office equipment and office furniture to Faith Family Worship Center, valued at $4,050 and $2,900, respectively. Petitioners attached a Form 8283 to their 2004 return and generically described the property as "office products & computers" and "office furniture". They also attached to their 2004 return a contemporaneous written acknowledgment from Faith Family Worship Center that generically described the donated property. Petitioners' receipt fails to provide a "description of the property in detail reasonably sufficient under the circum- stances". See sec. 1.170A-13(b)(1)(iii), Income Tax Regs. The Court therefore

[*73] has no basis to determine whether the value of petitioners' charitable contribution is reasonable.[33] Respondent's determination is therefore sustained.

### E.    2002 Chevy Suburban

In 2004 petitioners donated a 2002 Chevy Suburban valued at $26,245 to Faith Family Worship Center. Petitioners claimed a charitable contribution deduction of $15,245 on their 2004 tax return for the donation and reported receiving $11,000 cash from Faith Family Worship Center. Petitioners reported a gain of $3,694 on the disposition of the Suburban. Because petitioners failed to obtain a qualified appraisal, respondent disallowed $10,245.01 of the $15,245 charitable contribution deduction. Respondent also disallowed petitioners' claimed depreciation expense deductions with respect to the Suburban. After adjustment for the disallowed depreciation, petitioners' basis in the Suburban increased, which reduced petitioners' reported gain on the disposition of the Suburban from $3,694 to $2,064. The Court must decide whether petitioners' gain

---

[33]A taxpayer who lacks a donee receipt is required to keep reliable written records containing, among other things: (i) the name and address of the donee organization to which the contribution was made; (ii) the date and location of the contribution; (iii) a description of the property in detail reasonable under the circumstances (including the value of the property); and (iv) the fair market value of the property at the time the contribution was made and the method used to determine the fair market value. Sec. 1.170A-13(b)(2)(ii), Income Tax Regs.; see also Van Dusen v. Commissioner, 136 T.C. 515, 532 (2011). Petitioners did not provide any such records.

[*74] on the disposition of the vehicle should be reduced and whether petitioners are entitled to a greater charitable contribution deduction than respondent allowed.

Petitioners claimed the depreciation deductions for the 2002 Chevy Suburban on Schedules C for a vehicle and equipment rental activity for the years at issue. Respondent initially disallowed the deductions because petitioners had not shown that they conducted a trade or business under section 183 with respect to the activity. On brief respondent conceded that petitioners did conduct a trade or business with respect to the vehicle and equipment rental activity. Therefore, because respondent now concedes that the vehicle and equipment rental activity was operated for profit and did not challenge any specific deductions with respect to that activity, petitioners are entitled to the depreciation deductions for the 2002 Chevy Suburban. Petitioners therefore correctly reported their gain on the disposition of the Suburban as $3,694.

To substantiate the claimed charitable contribution deduction, petitioners attached to their 2004 return a page from the Kelly Blue Book Web site indicating the fair market value of the Suburban as $26,245. An appraisal summary by a qualified appraiser is required for charitable contributions deductions exceeding $5,000. See sec. 170(f)(11)(C); sec. 1.170A-13(c)(2)(i)(A), Income Tax Regs. A page from Kelly Blue Book is not a qualified appraisal because the donation is

[*75] greater than $5,000 and an appraiser was required to verify the vehicle and sign the appraisal. See sec. 170(f)(11)(E)(i); sec. 1.170A-13(c)(3), Income Tax Regs. Therefore petitioners are entitled to deduct only $5,000 as a charitable contribution for the 2002 Chevy Suburban.[34]

F.     Charitable Contribution Deductions From Petitioners' Business

In 2005 petitioners claimed charitable contribution deductions that flowed through to petitioners' Federal income tax return from Embroidery Services and Stitch It of $1,000 and $1,200, respectively. Of Stitch It's deduction, $1,000 is from an amount donated to R.L. Montgomery. Petitioners contend that this amount was transferred to Ranch House Ministries. For the same reasons that the Court disallowed the deductions to R.L. Montgomery Ministries, see supra part IV.C., the deduction for the amount paid to R.L. Montgomery is disallowed. Petitioners did not present any evidence about the other amounts deducted, and therefore have not carried their burden. Respondent's determination is sustained.

---

[34]Respondent contends that petitioners are entitled to deduct only $4,999.99 because an appraisal is required for charitable contribution deductions of $5,000 or more. However, sec. 170(f)(11)(C) requires a qualified appraisal for "a deduction of more than $5,000". Therefore, the maximum that petitioners can deduct without a qualified appraisal is $5,000.

**[*76]** G.     Jamaica Mission Travel

For 2006 petitioners claimed a charitable contribution deduction of $3,013 for unreimbursed travel expenses for a mission trip to Jamaica.  Respondent disallowed the deduction because petitioners did not obtain a contemporaneous written acknowledgment and did not comply with the recordkeeping requirements. See sec. 170(f)(8); sec. 1.170A-13(f)(10), Income Tax Regs.  The parties stipulated that petitioners did not obtain a contemporaneous written acknowledgment.  Because a contemporaneous written acknowledgment is required for a charitable contribution deduction of $250 or more, see sec. 170(f)(8)(a), respondent's determination is sustained.

V.     Section 6662(a)--Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) authorizes a 20% accuracy-related penalty on the portion of an underpayment of Federal income tax attributable to (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax.  Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Code.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  There is a "substantial understatement" of income tax for any year if the amount of the understatement for the taxable year

[*77] exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A); Higbee v. Commissioner, 116 T.C. at 448.

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties for an individual taxpayer. Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner has met the burden of production, the taxpayer has the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Pursuant to section 6664(c)(1), no penalty shall be imposed under section 6662 with regard to any portion of an underpayment if the taxpayer can show that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Whether a taxpayer acted with reasonable cause and in good faith is decided on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id.; see also Remy v. Commissioner, T.C. Memo. 1997-72, slip op. at 20. Reliance on the advice of a tax professional may, but does not necessarily, establish reasonable cause and good faith for the purpose of avoiding a section 6662(a) penalty. United States v. Boyle, 469 U.S. 241, 251 (1985). A

[*78] taxpayer's reliance on a competent tax professional may establish reasonable cause and good faith when the taxpayer provides necessary and accurate information to the adviser and actually relies in good faith on the adviser's judgment. See Longino v. Commissioner, 593 F. App'x 965, 970 (11th Cir. 2014), aff'g T.C. Memo. 2013-80; Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Respondent contends that petitioners are liable for the section 6662 penalties because there were substantial understatements of income tax, or alternatively because they were negligent. The parties made concessions before trial and on brief, and the Court did not sustain some of the items in the notice of deficiency. The Court finds that in the event the computations under Rule 155 establish that there is an underpayment attributable to a substantial understatement of income tax for any year, then respondent has met his burden of production.

Petitioners argue that they acted in good faith and with reasonable cause because they relied on their bookkeeper and their CPA. Mr. McMinn had a high school education, and to maintain records he hired a full-time bookkeeper. A CPA was also hired to review the bookkeeper's records and prepare the tax returns. The CPA had been licensed for 31 years, and he had prepared petitioners' tax returns for 19 years. To prepare petitioners' tax returns the CPA would review the

[*79] bookkeeper's records, make corresponding adjustments in the financial statements, and meet with Mr. McMinn to discuss positions on the return as well as his business ventures. The CPA credibly testified that the process of preparing the tax returns was extensive, and that Mr. McMinn had provided the CPA with all the necessary documentation to prepare the returns. To calculate the depreciation deductions for the vehicles, the CPA either received a report from the bookkeeper showing the percentage of business and personal use derived from mileage logs, decided that the vehicle was 100% for business use, or discussed with Mr. McMinn the ratio of business and personal use of the vehicle. The CPA also testified that he believed the 2002 Chevy Suburban deduction was properly substantiated.

The record indicates that Mr. McMinn relied heavily on both his bookkeeper and his CPA of 19 years to maintain financial information and properly substantiate deductions. Mr. McMinn believed that his tax positions were conservative and that he had properly complied with the Code. Although a taxpayer is ultimately responsible for his own recordkeeping, see sec. 6001, the Court holds that petitioners reasonably relied on their bookkeeper and their CPA. Petitioners clearly did not provide adequate documentation to substantiate all of their tax positions; however, they relied on their CPA to ensure that the proper

**[\*80]** documentation was obtained. From the record with respect to the positions that petitioners took without proper substantiation or that were contrary to the Code, the Court finds that the CPA chose the positions to take, and petitioners reasonably relied on him as their trusted expert adviser of 19 years.

Because we find that petitioners acted with good faith and reasonable cause, a discussion of whether petitioners are liable for negligence is not warranted.

VI.    Conclusion

The Court has considered all of the arguments made by the parties and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

Decisions will be entered

under Rule 155.